DAVID PATTON
FEDERAL DEFENDERS OF NEW YORK
CHASE SCOLNICK
Assistant Federal Defender
One Pierrepont Plaza – 16th Floor
Brooklyn, NY 11201
Tel: (718)330-1213
Fax:(718)855-0760
Email: chase_scolnick@fd.org

Attorneys for Defendant
WINSTON NICHOLAS CARR

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br> v. <br> WINSTON NICHOLAS CARR, <br> Defendant. | NO. 13-CR-448 (MKB) <br><br> **DEFENDANT'S MOTION TO SUPPRESS STATEMENTS** |

TO: LORETTA E. LYNCH, UNITED STATES ATTORNEY; AND RENA PAUL, ASSISTANT UNITED STATES ATTORNEY.

     Defendant Winston Carr, by and through his attorney of record, Assistant Federal Defender Chase Scolnick, will and hereby does move for an order suppressing all statements that he made to law enforcement agents on July 3, 2013.

     This motion is brought on the following grounds: (A) the statements were not the product of a knowing and intelligent *Miranda* waiver in violation of the Fifth Amendment; and (B) the statements were not voluntary.

1
2       This motion is based on the attached memorandum of points and authorities, the
3   files and records in this case, and any additional evidence or argument that may be
4   presented to the Court at or before the hearing on this motion.
5
6                       Respectfully submitted,
7
8                       DAVID PATTON
    Federal Defenders of New York
    Attorney for Defendant
9       WINSTON NICHOLAS CARR
    One Pierrepont Plaza – 16th Floor
10      Brooklyn, New York 11201
    Tel: (718) 330-1213
11      Email: chase_scolnick@fd.org
12
13  Dated: January 22, 2014       By /s/ _____
    CHASE SCOLNICK
14      Assistant Federal Defender
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

The indictment charges Winston Nicholas Carr with one count of importation of cocaine in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a) and 841(b)(1). Mr. Carr anticipates that, at trial, the government will seek to introduce statements that he allegedly made to law enforcement officers after he was arrested. The post-arrest statements should be suppressed because they were not the product of a knowing and intelligent *Miranda* waiver. They should also be suppressed because they were not voluntary.

### II.

### STATEMENT OF FACTS

On July 3, 2013, Mr. Carr arrived at the John F. Kennedy International Airport ("JFK") on a flight from Guyana. An agent from Customs and Border Inspection ("CBP") selected him for a thorough examination. As part of this examination, she asked Mr. Carr a number of questions regarding his trip and the two "Polo Club" pieces of luggage that he was carrying. She then escorted Mr. Carr to a screening area where she and another agent were conducting inspections of luggage.

During the inspection, the agent noticed that the bottom of the suitcase seemed unusually thick. She ordered Mr. Carr to remain at the inspection area while she x-rayed the luggage. The agent returned and began to tear the luggage apart. After removing the lining of the suitcase, the agent discovered a large package containing a white powder. She then put the luggage back together and she and another agent ordered Mr. Carr to a small room ("detention room").

The detention room was small and isolated from the general reception area for international travelers. It was apparently part of the CBP compound at JFK. Consistent with standard operating procedures of the CBP, the officers ordered Mr.

Carr to sit on a bench inside the room handcuffed his right hand to a bar on the side of the bench. The agents then began processing and photographing the cocaine.

The room was filled with agents, including Twarowski, Tepper, Czechura, Finn, and other agents and supervisors who came in and out of the room. They were in uniform and armed. Some of these officers questioned Mr. Carr. They told him that he was in a lot of trouble, and that this was a lot of cocaine. They explained to him that he could help himself by accepting responsibility and helping them make a controlled delivery of the drugs. To that end, they asked Mr. Carr who he would be delivering the drugs to and where this person would be picking him up. Mr. Carr refused to answer the agents questions. The agents continued to question Mr. Carr, however, and eventually Mr. Carr allegedly said that he himself was responsible for the offense. The agents continued to pressure Mr. Carr for more information. They told him that senior agents would soon question him and that he needed to help himself by confessing to those agents.

Shortly thereafter, an agent in plainclothes came into the room. For the first time that day, the agent informed Mr. Carr of his *Miranda* rights. Mr. Carr told the agent that he wished to speak to an attorney. In response, the agent told Mr. Carr that another senior agent would be in charge of the arrest. He also told Mr. Carr that he could help himself by speaking with this agent.

Moments later, the second senior agent entered the room, read Mr. Carr his *Miranda* rights and attempted to question him. Mr. Carr again invoked his right to counsel. At this point, all questioning stopped.

4

# III.

# ARGUMENT

## A. THIS COURT SHOULD SUPPRESS THE STATEMENTS BECAUSE MR. CARR DID NOT KNOWINGLY AND INTELLIGENTLY WAIVE HIS *MIRANDA* RIGHTS

Absent a *Miranda* advisement and knowing and intelligent waiver, a person's statements that are the product of custodial interrogation cannot be used against him in a criminal proceeding. *See Miranda v. Arizona*, 384 U.S. 436, 479 (1966). A person is in custody for *Miranda* purposes if a reasonable person in the same situation would "have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). "Interrogation" is defined as "express questioning" or any activity by law enforcement officers "reasonably likely to elicit an incriminating response." *Rhode island v. Innis*, 446 U.S. 291, 300 (1980).

Here, Mr. Carr was in custody when the agents questioned him. They initially ordered him to wait at the inspection table. After discovering a large package of cocaine hidden inside the luggage, two agents escorted him to the detention room. There, he was isolated from other travelers, handcuffed to a bench, and surrounded by five or more armed, uniformed agents. While the agents inspected and processed the cocaine, they informed him that he was in a lot of trouble and that he needed to help himself. Under these circumstances, no reasonable person would believe that they were free to terminate the questioning and go about their way.

Moreover, the agents questioning of Mr. Carr was an interrogation for *Miranda* purposes. The agents began by telling Mr. Carr how much trouble he was in. They explained that he needed to help himself by accepting responsibility and by telling the agents about the other people involved in the offense. The agents asked a number of questions in an effort to compel Mr. Carr to reveal his own alleged culpability and that of his coconspirators. In response to this questioning, the agents are now claiming that Mr. Carr made incriminating statements.

Because these alleged statements were not the product of a knowing and intelligent *Miranda* waiver, they were obtained in violation of the Fifth Amendment and must be suppressed.

### B. THIS COURT SHOULD SUPPRESS MR. CARR'S STATEMENTS BECAUSE THEY WERE INVOLUNTARY

The Supreme Court has held that, even when the procedural safeguards of *Miranda* are satisfied, a defendant in a criminal case is deprived of due process of law if his conviction is founded on involuntary statements. *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991); *Jackson v. Denno*, 378 U.S. 368. 387 (1964). Before the government may introduce a defendant's statements at trial, the court must conduct a hearing to determine whether the statements were voluntary. 18 U.S.C. § 3501.

The government has the burden of proving that the statements were voluntary by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 483 (1972). A confession is involuntary when law enforcement officials acted "such as to overbear [the accused's] will to resist and bring about confessions not freely determined." *Rogers v. Richmond*, 365 U.S. 534, 544 (1961).

To be considered voluntary, a statement must be the product of the accused's free will. *Blackburn v. Alabama*, 361 U.S. 199, 208 (1960); *see also Green v. Scully*, 850 F.2d 894, 900 (2d Cir. 1988) ("Is the confession the product of an essentially free and unconstrained choice by its maker?") . When a defendant's free will is overborne by outside pressures, a confession is deemed involuntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). "The test is whether the confession was 'extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence.'" *Hutto v. Ross*, 429 U.S. 28, 30 (1976) (quoting *Bram v. United States*, 168 U.S. 532, 542-43 (1897)). The determination of whether a person's free will was overborne in a particular case depends on a evaluation of the totality of the circumstances. *Schneckloth*, 412 U.S. at 226.

The statements here were involuntary. As many as six uniformed and armed agents hovered over Mr. Carr while he was chained to a bench. They told him how much trouble he was in and that his only way out was to speak with them. They began questioning him in an effort to get a confession. But Mr. Carr refused to answer their questions. According to the officers' latest version of events, they continued questioning him until he allegedly broke down and confessed. Because this alleged confession was the product of the officers' overreaching and intimidation, it was involuntary and must be suppressed.

## IV.

## **CONCLUSION**

For the foregoing reasons, Mr. Carr respectfully requests that the Court suppress all statements he made to law enforcement officers on July 3, 2013.

Respectfully submitted,

DAVID PATTON
Federal Defenders of New York
Attorney for Defendant
WINSTON NICHOLAS CARR
One Pierrepont Plaza – 16th Floor
Brooklyn, New York 11201
Tel: (718) 330-1213
Email: chase_scolnick@fd.org

Dated: January 22, 2014          By _____
                                  CHASE SCOLNICK
                                  Assistant Federal Defender